IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01696-PAB

ABEL R. ROMERO,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on plaintiff Abel R. Romero's complaint [Docket No. 1], filed on June 29, 2012. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On May 27, 2009, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 11. Plaintiff alleged that he had been disabled since May 6, 2006. *Id*. After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on February 10, 2011. *Id*. On March 2, 2011, the

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

ALJ issued a decision denying plaintiff's claim. *Id*. at 21.

The ALJ found that plaintiff had the following severe impairments: "Morbid Obesity, Diabetes Mellitus, Low back pain, bilateral knee osteoarthritis, and history of alcohol abuse." R. at 14. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 15, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. § 416.927(b) except he is limited to standing for two hours total in an 8-hour workday; less than occasionally climb ramps/stairs and never climb ladders/ropes/scaffolds; occasionally balance, bend, or stoop; never kneel, crouch, or walk on uneven terrain; frequently reach (overhead and other directions), handle, and finger; and no exposure to extreme cold or heat, dangerous machinery, or unprotected heights.

R. at 16. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 21.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred in (1) failing to properly consider plaintiff's severe and non-severe impairments at steps two and three; (2) assessing plaintiff's credibility; and (3) relying on the VE's testimony. Docket No. 16 at 17-25. He further argues that the case should be remanded for consideration of new evidence. Docket No. 16 at 14-16.

The relevant facts are as follows. Plaintiff is five feet and eleven inches tall and weighs over four hundred pounds. R. at 195. In May 2009, plaintiff applied for Social Security benefits, stating that he was disabled due to "Obesity 420lbs, knee and back problems." R. at 150. On September 22, 2009, physician Raymond Hilty performed a consultative examination of plaintiff. R. at 189. Plaintiff complained to Dr. Hilty of low back pain, knee pain, and exertional shortness of breath. *Id*. Dr. Hilty found that plaintiff had "[n]ormal muscle bulk and tone," 5/5 grip strength in each arm, 5/5 strength in each leg, and no atrophy or asymmetry. R. at 191. He diagnosed plaintiff with lumbar back pain, causing decreased range of motion and lumbar tenderness; bilateral knee pain, likely osteoarthritis due to his weight; exertional shortness of breath, also likely related to his weight; and morbid obesity. R. at 192. Dr. Hilty found the following functional limitations: standing, walking, and sitting capacity of up to six hours; lifting capacity of twenty pounds occasionally and ten pounds frequently; occasional climbing, balancing, stooping, kneeling, crouching or crawling; increased pain upon exposure to extreme cold or wet environments; and no ability to work at great heights or with dangerous machinery. R. at 192. Although the ALJ did not explicitly state the weight he gave to Dr. Hilty's RFC assessment, it appears he accorded it substantial weight, as

he adopted Dr. Hilty's limitations on lifting, postural limitations, and working conditions. *Compare* R. at 16 *with* R. at 192.

On November 11, 2009, plaintiff was examined by physician Constantine Georgiadis. R. at 195. Dr. Georgiadis diagnosed plaintiff with diabetes, measuring his blood sugar at 442 mg/dL. R. at 195. He noted that plaintiff had been diagnosed with hepatitis one year prior at University Hospital and that the hospital believed plaintiff's condition was caused by alcohol consumption.[2] R. at 196. Dr. Georgiadis did not confirm this diagnosis, but recommended that plaintiff's hepatitis status be reevaluated. R. at 196, 201.

Prior to 2010, plaintiff did not have health insurance, but, in the winter of 2010, he became eligible for coverage through his wife's employer. R. at 50-51. The insurance plan has a $9000 deductible for special procedures, such as lap band or gastric bypass surgery, but not for routine doctor's appointments. R. at 45-46. Plaintiff did not seek additional medical treatment between his November 2009 appointment and his administrative hearing in February 2011. R. at 48.

The ALJ found that plaintiff's history of alcohol abuse constituted a severe impairment. R. at 14. In his RFC determination, the ALJ noted that plaintiff's AST, ALT, Alkaline Phosphatase, and thyroid-stimulating hormone ("TSH") levels were high when Dr. Georgiadis measured them in November 2009. R. at 17. He also noted that Dr. Georgiadis wanted to reevaluate plaintiff's hepatitis status. *Id*. Dr. Georgiadis did not complete a functional assessment for plaintiff.

---

[2]Records from University Hospital are not included in the record.

In the summer of 2012, after the hearing in this case, plaintiff began receiving medical care from nurse practitioner Amy Snell-Johnson. Docket No. 16-2 at 1. In October 2012, plaintiff was diagnosed with hepatitis C. Docket No. 16-1 at 3. On October 24, 2012, a computer tomography scan of plaintiff's abdomen revealed "nodular contours consistent with cirrhosis" of the liver and a "5.6 cm mass in the right hepatic lobe highly suspicious for hepatocellular carcinoma," as well as signs of metastasis. Docket No. 16-1 at 1. Plaintiff subsequently reapplied for Social Security benefits and was found to be disabled as of October 29, 2012. Docket No. 18 at 2.

### 1. *New Evidence*

Plaintiff argues that this case should be remanded to permit the ALJ to consider new evidence that was unavailable at the time of plaintiff's hearing. Docket No. 16 at 14-16. The Commissioner counters that plaintiff has not shown good cause for failing to obtain this evidence prior to the hearing and that the evidence is not material. Docket No. 17 at 12-16.

A district court may remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In applying this standard,

> [C]ourts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute.

*Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1377 (9th Cir. 1979) (quoting *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)). "If new information surfaces

after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985).

However, remand is not justified unless there is a "reasonable likelihood that [the new evidence] would have changed the Secretary's determination." *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993). "An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). Thus, evidence of "a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand." *Id*. (finding that a psychiatric report issued eight months after an ALJ's determination did not relate to the relevant time period); *see also Rhodes v. Barnhart*, 117 F. App'x 622, 627 (10th Cir. 2004) (diagnosis of radicular syndrome of pain six months after ALJ's decision was not material as it showed only a subsequent deterioration of plaintiff's back impairment and did not relate to time period for which benefits were sought and denied).

According to the Social Security listings, "[c]hronic [hepatitis C] infection is diagnosed by the detection of hepatitis C viral RNA in the blood for at least 6 months." 20 C.F.R. 404, Subpt. P, App. 1, § (A)(5.00)(D)(4)(c)(i). The listings describe hepatitis C as a "slowly progressive" disorder "that [may] persist over many years during which the symptoms and signs are typically nonspecific, intermittent and mild." *Id*. at § (A)(5.00)(D)(4)(a)(i). Since viral hepatitis is often treatable, "episodes of acute liver

disease" do not meet the listings in the "absence of evidence of a chronic impairment." *Id.* at § (A)(5.00)(D)(2). In addition, certain "abnormal lab tests, such as liver enzymes . . . may have a poor correlation with the severity of liver disease and functional ability." *Id.* at § (A)(5.00)(D)(3)(c).

Plaintiff argues that his October 2012 diagnosis of hepatitis and possible liver cancer is grounds for remand as it demonstrates that he was likely suffering from liver disease at the time of his initial application. Docket No. 16 at 15. Plaintiff further argues that he had good cause for not submitting this evidence at an earlier date because he lacked the financial resources to obtain medical treatment earlier prior to the hearing. Docket No. 16 at 16. The Commissioner counters that plaintiff has not demonstrated good cause for not obtaining this evidence prior to the ALJ's decision and that, in any event, the evidence does not pertain to the relevant time period. Docket No. 17 at 12-16.

The Court concurs that plaintiff has not demonstrated good cause for not obtaining evidence of his hepatitis status prior to his hearing. Plaintiff states that he did not have the financial resources to follow Dr. Georgiadis' November 2009 recommendation that he have his previous diagnosis reevaluated. Docket No. 18 at 2; *see* R. at 201. However, plaintiff obtained health insurance through his wife in the winter of 2010. R. at 50-51. He does not explain why he did not seek a reassessment of his condition between that point and the administrative hearing in February 2011. Nor does he explain how his financial situation changed in 2012 such that he was then able to obtain a diagnosis of his liver condition and seek treatment for it.

Furthermore, the 2012 diagnosis does not discuss the time period prior to the

9

ALJ's decision, but refers only to plaintiff's current condition. See Docket No. 16-1 at 3-4. As the diagnosis was obtained over a year and a half after the ALJ's decision, and in light of the potentially "poor correlation" between abnormal liver enzyme levels and the "severity of liver disease and functional ability," there is no basis for finding that it is applicable to the relevant time period. See 20 C.F.R. Part 404, Subpt. P, App. 1, § (A)(5.00)(D)(3)(c); Jones, 122 F.3d at 1154; Rhodes, 117 F. App'x at 627.

In sum, plaintiff has not demonstrated a "reasonable likelihood that [the new evidence] would have changed the Secretary's determination," Woolf, 3 F.3d at 1215, and thus the new evidence does not support a remand under 42 U.S.C. § 405(g).

### 2. Severe and Non-Severe Impairments

Plaintiff argues that the ALJ erred at steps two and three of his analysis by failing to consider evidence that plaintiff suffers from hepatitis, high blood pressure, hyperthyroidism, and impaired vision. Docket No. 16 at 17-19. The Commissioner responds that plaintiff's "argument rests on the mistaken idea that the ALJ should have made his own diagnoses about Plaintiff's condition, without a confirmed diagnosis or other guidance from a medical source." Docket No. 17 at 17.

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination." Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006). An impairment is "medically determinable" if it is supported by "medical signs or laboratory findings." 20 C.F.R. § 404.1529(b); see also 20 C.F.R. § 404.1508. Evidence from "acceptable medical sources" is required to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1513(a). Acceptable

sources include licensed physicians, psychologists, and optometrists. *Id*.

Plaintiff's case record does not contain an opinion from an acceptable medical source diagnosing him with high blood pressure, hyperthyroidism, impaired vision, or hepatitis. Instead, plaintiff points to abnormal test results that may be indicative of the cited conditions. *See* Docket No. 16 at 17-19. To wit, with respect to his asserted impairment of hepatitis, plaintiff cites abnormal liver enzyme test results from November 2009 and Dr. Georgiadis' indication that plaintiff had previously been diagnosed with hepatitis. R. at 201. However, Dr. Georgiadis' notes do not confirm the diagnosis, stating only: "Problem #2: HEPATITIS. . . . This needs re-evaluation. I'd like to review his records from [University Hospital] as well." *Id*.

Likewise, plaintiff relies on Dr. Hilty's finding that his blood pressure was 145/100 on September 2, 2009, R. at 190, and Dr. Georgiadis' finding that his blood pressure was 132/80 on November 11, 2009, R. at 195, to support his claim that he suffers from high blood pressure. Docket No. 16 at 18. However, Dr. Hilty did not diagnose plaintiff with high blood pressure, finding only that plaintiff has "[n]o blood pressure end-organ defect" and diagnosing him with lumbar back pain, bilateral knee pain, exertional shortness of breath, and morbid obesity. R. at 191-92. Dr. Georgiadis identified only two problems: diabetes and possible hepatitis. R. at 197, 201.

Plaintiff further argues that he suffers from hyperthyroidism on the basis that Dr. Georgiadis found he had a high TSH level on November 11, 2009. Docket No. 16 at 19 (citing R. at 199). Again, however, the record does not contain an opinion from an acceptable medical source diagnosing plaintiff with a thyroid condition.

Finally, plaintiff argues that the ALJ erred in stating that "[h]is hearing and vision

11

were normal." Docket No. 16 at 19 (citing R. at 17). Plaintiff cites Dr. Hilty's finding that his uncorrected vision was 20/70 in both eyes and his corrected vision was 20/30 in his left eye and 20/50 in his right eye. R. at 190. However, plaintiff did not present evidence to the ALJ indicating that his eyesight limits his functional abilities, nor do his medical reports discuss his eyesight as an impairment.

As neither plaintiff nor the ALJ is an acceptable medical source qualified to diagnose impairments based on raw medical data, there is no basis for finding that plaintiff's high blood pressure, hypertension, vision, or hepatitis constituted a medically determinable impairment that the ALJ should have considered at steps two and three.

### 3. *Credibility Determination*

Plaintiff argues that the ALJ erred in assessing his credibility because he improperly relied on plaintiff's failure to obtain medical care that plaintiff states he could not afford. Docket No. 16 at 20-22. Plaintiff further argues that the ALJ was not entitled to rely on inconsistencies in plaintiff's testimony or evidence of his minimal daily activities. Docket No. 16 at 19-20, 23. The Commissioner counters that the ALJ's assessment was reasonably based on a number of permissible factors. Docket No. 17 at 20-21.

In assessing plaintiff's credibility, the ALJ first noted discrepancies between plaintiff's testimony at the hearing and the statements he made on the function report he submitted in September 2009. R. at 18-19. For example, at the administrative hearing, plaintiff testified that, since 2006, he has been unable to walk more than twenty-five feet in a day, R. at 51, 53, but, on the function report, plaintiff stated that he could walk "about 1/4 mile." R. at 161. The ALJ noted the alleged reduction in

plaintiff's ability to lift and found there was no medical basis for this change. R. at 19; *compare* R. at 161 *with* R. at 53. The ALJ noted that plaintiff had not obtained any medical treatment since November 2009[3] when he was diagnosed with diabetes, despite being told at that appointment that his blood sugar was significantly above the normal range[4] and despite acquiring health insurance in early 2010. R. at 19, 48-49. The ALJ took into account the lack of evidence that plaintiff attempted to lose weight on his own. R. at 19. The ALJ found that the objective medical evidence did not support plaintiff's claims of extensive physical deterioration. R. at 19. Finally, the ALJ noted that plaintiff's stated interest in finding work is belied by his spotty work history predating the alleged onset of disability. *Id.*

"Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Credibility determinations may not be conclusory, but must be "closely and affirmatively linked" to evidence in the record. *Id.* In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

---

[3] The ALJ incorrectly listed this date as November 2008 in his opinion. *Compare* R. at 19 *with* R. at 48.

[4] Blood sugar levels above 200 mg/dL are indicative of diabetes. Stedman's Medical Dictionary 110330 (27th ed. 2000). Plaintiff's blood sugar was measured at 442 mg/dL in November 2009. R. at 195.

> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. While evidence of a claimant's daily activities "may be considered, along with medical testimony, in determining whether a person is entitled to disability benefits," such daily activities do not "in themselves establish that a person is able to engage in substantial gainful activity." *Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987). In addition, an ALJ "must not draw any inferences . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as being unable to afford treatment. SSR 96-7p, 1996 WL 374186, at *7.

The ALJ relied on a number of factors in assessing plaintiff's credibility, including

inconsistencies between plaintiff's statements over time, inconsistencies between plaintiff's statements and the objective medical evidence, plaintiff's conduct in seeking medical care, and plaintiff's poor work history.  *See* R. at 18-19.  Contrary to plaintiff's assertions, *see* Docket No. 16 at 23, the ALJ did not discuss plaintiff's daily activities in making his credibility determination.  R. at 18-19.  Morever, the ALJ considered plaintiff's explanation for his failure to seek medical treatment–namely, that he did not have health insurance and could not afford care–and found this explanation insufficient to account for plaintiff's failure to seek any treatment for his obesity or his diabetes after he obtained insurance in early 2010.  R. at 11, 18-19; *see* SSR 96-7p, 1996 WL 374186, at *8.

As the ALJ's credibility determination is "closely and affirmatively" linked to substantial evidence in the record, the Court will not disturb it on appeal.  *See Kepler*, 68 F.3d at 391.

### *4. Step Five Analysis*

Plaintiff argues that the ALJ erred at step five of his analysis in relying on the VE's testimony because the hypothetical questions that the ALJ posed to the VE did not include a vision limitation or account for plaintiff's need to alternate between sitting and standing positions.  Docket No. 16 at 23-24.  In addition, plaintiff argues that the VE's testimony did not establish the existence of sufficient numbers of jobs because the VE did not factor in the recent economic downturn.  Docket No. 16 at 25.

At the administrative hearing, the ALJ asked the VE whether someone with plaintiff's RFC, age, education, and work experience would be able to find jobs in the

national economy. R. at 54-55. The VE identified three jobs that someone with plaintiff's background and abilities could perform: cutter and paster, telemarketer, and addresser. *Id*. The VE stated that these jobs could also be performed by someone who could only stand for two hours a day. *Id*. Plaintiff's attorney asked the VE whether these jobs could be performed by someone who needs to alternate between sitting and standing every fifteen minutes, throughout the day. R. at 56. The VE stated that the addresser and cutter and paster jobs would accommodate this limitation. *Id*. Plaintiff's attorney then asked the VE whether these jobs required good vision. R. at 56. The VE testified that both the addresser and cutter and paster jobs would require "good visual acuity," but stated he was unqualified to testify as to whether plaintiff's eye exam indicated he met this requirement. R. at 56-57. The VE also testified that "it would be reasonable to reduce the numbers" of jobs available based on the recent economic decline, but declined to quantify any reduction, explaining that "he wouldn't give it any weight" because it "would be strictly an assumption on [his] part, which [he] wouldn't want to do." R. at 57-58.

By challenging the determination at step five, plaintiff reasserts his challenges to the ALJ's assessment of his impairments at steps two and three. However, as explained above, the ALJ's assessment of plaintiff's severe and non-severe impairments was based on substantial evidence. The ALJ did not err in excluding impairments that were unsupported by an acceptable medical source, such as plaintiff's alleged vision impairment. As the VE's testimony reflected, only an acceptable medical source can diagnose a claimant with an impairment. *See* R. at 57 ("In your opinion, would a corrected vision of 20/30 in one eye and 20/50 in the other eye impact the

person's ability to that job, both jobs? A. I don't think I'm qualified to answer that."). Moreover, the VE testified that both the addressor and cutter and paster jobs would be available to an individual who had to alternate sitting and standing frequently. R. at 56. Finally, the VE declined to alter his estimate of the number of jobs available based on general economic trends and stated that any attempt to do so would be based only on his assumptions. R. at 57-58.

In sum, the Court has not found fault with the ALJ's assessment of plaintiff's severe impairments. Moreover, even if additional limitations were included in plaintiff's RFC, the VE's testimony indicates there would nonetheless be sufficient jobs in the national economy that he is capable of performing. Thus, there is no basis for finding error at step five in the ALJ's reliance on the VE's testimony.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is AFFIRMED.

DATED March 20, 2014.

                                  BY THE COURT:

                                  s/Philip A. Brimmer
                                  PHILIP A. BRIMMER
                                  United States District Judge